E-FILED
Wednesday, 26 October, 2005  12:35:26 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA

| | | |
|---|---|---|
| JENNIFER SWEARINGEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1081 |
| | ) | |
| MOTOROLA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Plaintiff Jennifer Swearingen has filed a two-count Complaint against her former employer Defendant Motorola, Inc. ("Motorola"). Count One alleges a willful violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*("FMLA"): Motorola failed to reinstate her employment after she returned from FMLA-entitled leave. The Count Two contract claim is based upon Plaintiff's assertion that Motorola refused her right to a severance package. In response, Motorola puts forth several defenses: (1) that the FMLA claim is time-barred under § 2617(c)(1) because it was filed beyond the two-year statute of limitations period for bringing FMLA actions; (2) that Motorola had no contractual obligation to provide a severance package to Plaintiff; and (3) that Plaintiff's claim is preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 109 *et seq.* ("ERISA").

### FACTUAL BACKGROUND

The material facts pertinent to the summary judgment motion are not in dispute and are considered in the light most favorable to Plaintiff. From June 1997 until February 2001, Plaintiff was an at-will employee of Motorola, Inc. working in finance positions at Motorola's facilities in Illinois ending up as an International

Finance Analyst in the Rolling Meadows, Illinois facility working remotely from her residence in Hampton, Virginia.  Beginning in September 2000, Plaintiff took leave from her job first on a six-week pregnancy leave followed by a twelve-week unpaid FMLA leave expiring January 31, 2001, which was the agreed return to work date.  While on FMLA leave in late 2000 and early 2001, the Department at Motorola in which Plaintiff worked was dissolved and her position eliminated.  When Plaintiff heard that Motorola was undergoing a reduction in force and that her department was being dissolved and her position eliminated, she began looking for a new position within Motorola shortly after she began FMLA leave and was assisted by Motorola employees, Sheryl Martins and Susan Sampson in Global Finance, and Kathy Fisher in Human Resources.  Apparently, it was the responsibility of Plaintiff's immediate supervisor and/or Human Resources to act for Motorola in finding a new position for Plaintiff.

On January 31st, Plaintiff was not restored to her former position but was told that a new position would be found for her.  She was offered a new position on February 5, 2001, as a Finance Analyst at a Motorola facility in the Chicago, Illinois area, but she would not be able to work remotely.  The new position was declined by Plaintiff on February 7, 2001, who found it impracticable to relocate again from her temporary residence with her parents in Bloomington, Illinois, since she would not be allowed to work remotely.  In the meantime, Plaintiff had sought employment with State Farm Insurance in Bloomington, Illinois, and eventually obtained employment there in March 2001 at approximately the same salary and benefits.  Upon rejecting the new position offered her on February 7, 2001, Plaintiff indicated to Kathy

Fisher of Human Resources that she accepted the involuntary severance package she believed she had been offered by Kathy Fisher earlier in January 2001. After she rejected the new position offered her, Plaintiff was told by Kathy Fisher that she was no longer eligible for a severance package because a position had been found for her within one week of the return to work date.

Motorola maintains an Involuntary Severance Plan ("ISP") that governs severance benefits and a Summary Plan Description ("SPD") which provides additional information about the ISP. Both the ISP and the SPD are governed by ERISA. The SPD contains the procedures for appeals of claims for benefits. The SPD explains that if a participant makes a claim for benefits, the claim must be in writing and filed with the Plan Administrator and that within ninety (90) days after receiving a claim (or within 180 days if special circumstances require an extension of time and written notice was provided before the expiration of the initial ninety (90) day period), the Plan Administrator will make a decision to accept or reject (or partially accept or reject) the claim and will then notify the participant of the decision. If the Plan Administrator denies all or part of the claim, the participant has the right to appeal the denial to the Motorola Director of Human Resources not later than sixty (60) days after receipt of notice from the Plan Administrator denying the claim. The Motorola Director of Human Resources will then make a decision, which will be communicated to the participant in writing, with respect to such an appeal within sixty (60) days after the request for the appeal (this period can be extended for special circumstances).

The SPD also reminds participants that they cannot challenge the decision of "the Plan Administrator or the Motorola Director of

3

Human Resources in court or in any other administrative proceeding unless and until the claim and appeal procedures described above [in the SPD] have been complied with and exhausted."

Plaintiff did not file an appeal of the alleged denial of severance benefits according to the claims procedures outlined in the SPD. Indeed, Plaintiff did not file a claim at all.

## APPLICABLE LAW

Summary Judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show there is no genuine issue of material fact." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In considering the facts in the light most favorable to the party opposing the motion, the Court is not "required to draw every conceivable inference from the record - only those inferences that are reasonable." <u>Bank Leumi Le-Isreal, B.M. v. Lee</u>, 928 F.2nd 232, 236 (7th Cir. 1991).

To survive summary judgment the non-movant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Becker v. Tennebaum-Hill Assoc., Inc.</u>, 914 F.2d 107, 110 (7th Cir. 1990). A non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). Further, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].

Anderson, 477 U.S. at 252. Finally, "the Plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment . . . instead, [s]he must supply evidence sufficient to allow a jury to render a verdict in her favor." Basith v. Cook County, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it would bear the burden at trial." Filipovic v. K & R Express Sys., Inc., 176 F.3d 390 (7th Cir. 1999).

**A.   FMLA Claim**

The FMLA provides employees with only two substantive rights: (1) the right to take unpaid leave for a period of up to 12 work weeks in any 12 month period for a serious health condition as defined by the Act; and (2) the right to be reinstated, after the period of qualified leave expires, to an employee's former position or an equivalent position with the same benefits and terms of employment that existed prior to the exercise of leave. 29 U.S.C. § 2614(a); see also King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999); Rice v. Sunrise Express Inc., 209 F.3d 1008, 1016-17 (7th Cir. 2000), Reh'g en banc denied, 217 F.3d 492, cert denied, 531 U.S. (1012-2000).

To protect these rights, the FMLA provides two types of claims: (1) interference claims, for when an employer denies or otherwise interferes with an employee's substantive rights under the Act, see 29 U.S.C. § 2615(a)(1); and (2) retaliation/ discrimination claim, for when an employer takes action against an employee for exercising his rights under the Act, see 29 U.S.C. § 2615(a)(1) and (2); 29 CFR § 825.220(c) ("an employer is prohibited from discriminating against employees . . . who have used FMLA

leave"). See King, 166 F.3d at 891; Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001).

Plaintiff has brought an interference claim - one alleging that she was not returned to the same or an equivalent position when her FMLA leave expired. To prevail on a claim of interference with a substantive FMLA right, an employee must establish that she was entitled to the right she was denied, *i.e.*, leave or reinstatement. King, 166 F.3d at 891; Rice, 209 F.3d at 1018. An employer can deny an employee reinstatement if it can show that it would have discharged the employee had she not been on FMLA leave. Rice, 209 F.3d at 1018, Kohls v. Beverly Enters. Wisconsin., Inc., 259 F.3d 799, 804 (7th Cir. 2001) (The right to reinstatement is not absolute and excludes "any right, benefit or position of employment other than any . . . to which the employee would have been entitled had the employee not taken leave") (29 U.S.C. § 2614(3)). See Karitis, 131 F.3d at 681 (an employee who takes leave under FMLA "has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed under the FMLA leave period"); 29 CFR § 825.216(a). The FMLA has a built-in statute of limitations - claims must be brought within "2 years after the date of the last event constituting the alleged violation"; 3 years if the alleged violation is willful. See 29 U.S.C § 2617(c).

**B.  Breach of Contract Claim**

Under Illinois law to sustain a claim for breach of contract, Plaintiff must establish that (1) there was an offer and acceptance of the offer; (2) consideration was provided; (3) there were definite and certain terms of the contract; (4) Plaintiff performed all of her contractual obligations; (5) Defendant breached the

identified terms of the contract; and (6) Plaintiff sought the damages resulting from the Defendant's breach. See <u>Barille v. Sears Roebuck & Co.</u>, 289 Ill. App. 3d 171, 175 (1st Dist. 1997). The principal object of construing a contract is to give effect to the intent of the parties. <u>Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.</u>, 348 Ill. App. 3d 929, 941 (7th Dist. 2004). Courts will not imply factual conditions that are not expressed in a contract. <u>Finch v. Illinois Community College Board</u>, 315 Ill. App. 3d 831, 836 (5th Dist. 2000).

## DISCUSSION

### A.  The FMLA Claim

The three bases for summary judgment are: (1) the claim is time barred under applicable statute of limitations; (2) Motorola returned Plaintiff to an equivalent position after her leave expired; and (3) Plaintiff was not entitled to job reinstatement because her department was dissolved and her position was eliminated while she was on leave.

#### 1.  Statute of Limitation

The statute of limitations for actions under FMLA is "2 years after the date of the last event constituting the alleged violation for which the action is brought;" however, if the action is brought for a willful violation, the limitation period is 3 years. See 29 U.S.C. § 2617(c)(1) and (2). Plaintiff's Complaint was filed on February 2, 2004, more than two years after her FMLA leave expired on January 31, 2001, a year past the two-year limitation period. However, Plaintiff can still survive summary judgment upon a showing that the violation was willful creating a three-year

statute of limitations cut-off date of February 2, 2004.[1]  See Fed. R. Civ. P. 6.

Indisputably, by January 31, 2001, Plaintiff knew that she would not have back her same or equivalent job upon her return to work.  Consequently, January 31, 2001, is the date on which the last event occurred constituting a FMLA violation.  Her Complaint was accordingly filed more than two years after her FMLA leave expired on January 31, 2001, and is barred by the two-year statute of limitations period.  The question remains: whether there is a showing that the alleged violation was willful?  Neither the FMLA or associated regulations prescribed by the Secretary of Labor define "willful".  See 29 CFR § 825, *et seq*.  Analogous language in the Fair Labor Standards Act has been interpreted to mean that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988); Hanger v. Lake County, 390 F.3d 579, 583 (8th Cir. 2004); Artis v. Palos Cmty. Hosp., 2004 U.S. Dist. LEXIS 20150 * 26-27 (N.D. Ill. September 22, 2004).

The only facts supporting Plaintiff's argument that the denial of her FMLA rights was willful are that Motorola "was aware of Plaintiff's return to work date," and "failed to restore her to an equivalent position as of her return date of January 31, 2001."  Even though Motorola has failed to address this argument in its

---

[1] The three-year statute of limitations period running from January 31, 2001, normally would have expired on January 31, 2004, but it fell on a Saturday.  Pursuant to Rule 6, "[t]he last day of the period so computed shall be included, **unless it is a Saturday**, a Sunday, or a legal holiday . . . in which event the period runs until the end of the next day which is not one of the aforementioned days."  Fed. R. Civ. P. 6 (emphasis added).  Therefore, the last day of the three-year statute of limitations period was not until Monday, February 2, 2004, the day in which Plaintiff filed her Complaint.

summary judgment motion, as a matter of law, the Court finds no basis in the record for a reasonable jury to find a willful violation of FMLA. In recognition of its responsibility to reinstate Plaintiff to her old job or an equivalent one, as late as "early January 2001, on-going efforts were made by Motorola to find a position for Plaintiff culminating in an offer of a position in the Chicago area as a financial analyst in the finance department managed by Jim Prebish on or about February 5, 2001." These facts do not show a willful violation but rather a focused effort to find a new position for Plaintiff in a reasonable fashion – less than a week delay in offering her the new position is contra indicative of willfulness. Since Plaintiff cannot make out a case for a willful violation of FMLA, the two-year statute of limitations would bar her FMLA claim.

   2.   **Equivalency of New Position Offered Plaintiff**

Motorola appears to be under the impression that it had a reasonable period of time after Plaintiff's return to work date of January 31, 2001, to restore Plaintiff to her old position or an equivalent position. Motorola argues that an equivalent position was offered Plaintiff on February 5, 2001, a mere five days after her return to work date; therefore, Motorola satisfied its obligation under the FMLA. Motorola is mistaken in its understanding of Plaintiff's FMLA rights. Where there is agreement as to the return to work date, as existed in the instant case, Plaintiff is entitled to restoration to her old job or an equivalent position on the return to work date, not five or even one day later, no matter how reasonable the delay. "The 'equivalent position' under § 2614(a)(1)(13) recognizes the dynamic needs of employers and permits them to restore employees to

9

positions other than the exact one they left, but it does not permit the employer to delay an employee's restoration for a 'reasonable time' after returning from FMLA leave." Hoge v. Honda of Am. Mfg., 384 F.3d 238 (6th Cir. 2004). Under FMLA regulations:

> (a) an equivalent position is one that is virtually identical in terms of pay, benefits and working conditions, including privileges, perquisites and status.
>
> * * *
>
> It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skills, effort, responsibility, and authority.
>
> (e) Equivalent terms and conditions of employment means that:
> (1) The employee must be reinstated to the same or a geographically proximate work site (*i.e.*, one that does not involve a significant increase in commuting time or distance) from where the employee had previously been employed. If the employee's original work site has been closed, the employee is entitled to the same rights as if the employee had not been on leave when the work site closed. For example, if an employer transfers all employees from a closed work site to a new work site in a different city, the employee on leave is also entitled to transfer under the same conditions as if he or she had continued to be employed.
> (2) The employee is ordinarily entitled to return to the same shift or the same or an equivalent work schedule.
>
> * * *

29 CFR 825, 215(a) and (e); Smith v. Univ. of Chicago Hosps., 2003 WL 2275, 7754 *5 (N.D. Ill. November 20, 2003).

The position finally offered Plaintiff was substantially similar in pay and other respects except Plaintiff would not be allowed to perform her work remotely as she was doing at the time she took FMLA leave. Under the FMLA Regulations reasonably interpreted, the absence of this remote working condition would prevent a finding of job equivalency. Without regard to Plaintiff's relocation back to her parents in Bloomington,

10

Illinois, upon learning there was no position for her at Motorola upon her return from FMLA leave on January 31, 2001, Plaintiff was entitled to a continuation of this remote work feature of her past position at Motorola at the time she began FMLA leave. Consequently this theory of summary judgment for Motorola is rejected.

### 3. Non entitlement to reinstatement because of Reduction in Force and Loss of Position

Defendant argues that it had no duty to reinstate Plaintiff because her department was dissolved and her position eliminated pursuant to a reduction in force while she was on FMLA leave. However, there is no evidence in the record that Motorola made any effort or had any intent or desire to terminate Plaintiff while she was on leave. Instead, it is undisputed that other employees in her department were all transferred to other positions at Motorola, including Plaintiff's replacement, John Larsen.[2]

Where an employer contends that an employer's position would not have been available even if the employee had not taken FMLA leave, the employer must make a factual showing to support this argument. In the instant case, Motorola has failed to make such a showing. Further, by Defendant's own records and admissions, Plaintiff remained an active employee during her leave and subsequent to her leave expiration. In fact, as late as March 2001, Plaintiff remained an active employee on Defendant's system. Defendant failed to take any actions consistent with its argument that Plaintiff would have been laid off even if she would not have taken FMLA leave. Defendant's argument that its obligation ceased

---

[2] While John Larsen was ultimately terminated by Motorola, it did not occur until May 20, 2001, and when he received the Involuntary Severance Package.

when Plaintiff was laid off fails as Defendant never laid her off.

For all these reasons, summary judgment is denied on this ground.

**B.  Breach of Contract Claim**

Plaintiff's breach of contract claim is based upon the theory that Motorola offered and she accepted a severance package when she was not reinstated upon her return from FMLA leave on January 31, 2001. The factual support is undisputed and rests upon a conversation Plaintiff says she had with Kathy Fisher, a Human Resources representative of Motorola on or about January 31, 2001, who told her that if they did not find a position for her, she would "still qualify for a severance package." Plaintiff claims that she accepted this offer on February 5, 2001, by communicating her acceptance of the severance package to Kathy Fisher.

Assuming the truth of Plaintiff's factual showing, Fisher told Plaintiff on or about January 31, 2001, that if they could not find a position for her, Plaintiff would still qualify for the severance package. (Plaintiff's deposition, page 47-48). Plaintiff asks the Court to construe "qualify" as the equivalent of an "offer" of a severance package. Even if the Court would accept that construction, there is an insufficient showing that there was a meeting of the minds between the two. There were no mention of the terms of the package although it would not be unreasonable for Plaintiff to presume that the terms would be consistent with formulated company policy. Unfortunately, there was no company policy authorizing ISP's (Involuntary Severance Package) until weeks later in March 2001, a fact known to Plaintiff at the time. [Plaintiff's deposition page 54-56]. On the other hand, Plaintiff's deposition testimony indicates her awareness that the

12

existence of an ISP was to be implemented in the "very near future." [Plaintiff's deposition pages 54-56].

The Court finds that no reasonable jury could find that Plaintiff was offered an involuntary severance package by Motorola which is an essential element of Plaintiff's contract claim or that there were a meeting of the minds on this matter. Consequently, Motorola is entitled to summary judgment on Count II.

Even if Plaintiff had a state law contractual right to a severance package, Motorola would be entitled to summary judgment for the reason that Plaintiff's claim for a severance package would be preempted by ERISA. It is unchallenged by Plaintiff that Motorola's ISP is governed by ERISA. Both the ISP and SPD clearly state that the plan "is an unfunded welfare benefit plan under the terms of the Employee Relations Income Security Act of 1974 as amended ("ERISA"); and both documents state that the Plan is "governed and construed in accordance with ERISA . . ." Because the Plan is governed by ERISA and because Plaintiff's claim is clearly one for benefits under the Plan, her breach of contract claim is preempted by ERISA. See 29 U.S.C. § 1144(a); Bowles v. Quantum Chem. Co., 266 F.3d 622, 631 (7th Cir. 2001)("ERISA will preempt a state law breach of contract claim if the claim requires the court to interpret or to apply the terms of an employee benefit plan."); see also Miller v. Taylor Insulation Co., 39 F.3d 755, 758 (7th Cir. 1994)(ERISA preempts state law, including common law, that relates to an ERISA plan).

As a prerequisite to filing this suit for benefits under ERISA, Plaintiff was required to exhaust her internal administrative remedies. See Zhou v. Guardian Life Ins. Co. of Am., 295 F.3d 677, 679 (7th Cir. 2002). Indeed, the SPD

specifically states that participants cannot challenge the decision of "the Plan Administrator or the Motorola Director of Human Resources in court or in any other administrative proceeding unless and until the claim and appeal procedures described above have been complied with and exhausted." The exhaustion requirement furthers the goals of minimizing frivolous lawsuits and "enables the preparation of a more complete factual record for judicial review." Id. (citing Gallegos v. Mt. Sinai Med. Ctr., 210 F.3d 803, 807-08 (7th Cir. 2000)); see also Tolle v. Carroll Touch, Inc., 23 F.3d 174, 180-181 (7th Cir. 1994)(affirming grant of summary judgment to defendant where plaintiff failed to exhaust all administrative remedies available).

Here, Plaintiff did not exhaust the claim appeal process set forth in the SPD. The first step in that process is for an individual to file a claim, which will then be granted or denied by the Plan Administrator (in whole or in part). If the claim is denied, the claimant will receive notice in writing. Then, if the individual disagrees with the decision to deny the claim, the individual has the right to have Motorola's Director of Human Resources reconsider that claim, but the individual must request that review within sixty (60) days of denial of the claim.

With respect to her claim for benefits under the Plan, Plaintiff failed to comply with the claim procedure. Indeed, Plaintiff failed to file a claim at all. As such, it is clear that she failed to exhaust her administrative remedies, and Defendant is entitled to summary judgment on her claim for benefits under the Plan. See Zhou, 295 F.3d at 677; Gallegos, 210 F.3d at 811 (affirming summary judgment to defendant where plaintiff failed to request review of her denied benefits claim within the sixty (60)

day deadline outlined in the summary plan); <u>Ames v. American Nat'l Can Co.</u>, 170 F.3d 751, 757 (7th Cir. 1999)(affirming summary judgment to defendant where plaintiffs failed to exhaust internal plan remedies).

## CONCLUSION

For the reasons set forth above, summary judgment is awarded in favor of Motorola, Inc., and against Plaintiff on both counts of the Complaint and the case is terminated.

ENTERED this  26  day of October, 2005.

 /s/  Joe B. McDade  
JOE BILLY McDADE  
United States District Judge
